# UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

| | |
|---|---|
| ROBERT RENNAKER, as Administrator of the Estate of OLIVIA A. RENNAKER, <br><br> Plaintiff, <br><br> vs. <br><br> VIRGIL BREWER, <br><br> LONNIE SMALL, <br><br> ANDREW PAASCH <br><br> MARK SUCHY, <br><br> JANET LEONARD, and <br><br> CHERYL SEIPEL, <br><br> Defendants. | Case No. 2:20-cv-02165-SAC-GEB |

## FIRST AMENDED COMPLAINT

Robert Rennaker, as Administrator of the Estate of Olivia A. Rennaker, deceased, alleges and states as follows:

1. This case arises out of the April 9, 2018 death of 29-year-old Olivia A. Rennaker while she was detained in the Barber County Jail for a minor drug possession charge.

2. The Barber County Jail was operated and supervised by Barber County Sheriff Lonnie Small and Barber County Undersheriff Virgil "Dusty" Brewer.

3. Sheriff Small and Undersheriff Brewer were responsible for supervising and protecting those in custody in the jail, including Ms. Rennaker.

4. Defendants Andrew Paasch, Mark Suchy, Cheryl Seipel, and Janet Leonard were also responsible for supervising and protecting those in custody, including Ms. Rennaker.

{00581731}

5. The Barber County Jail lacks accreditation. There are at least four recognized jail accreditation organizations but Barber County has failed to seek accreditation from any one of the organizations.

6. In 2018, Barber County Sheriff's Office reported an average daily inmate population of four and a jail capacity of seven.

7. In an April 2018 Performance Audit Project by the Kansas Legislative Division of Post Audit, the audit found that the Barber County Jail lacked mental health screening and the jail also lacked mental health training.

8. It is a well-known fact that inmates are at a much higher risk of suicide than non-custodial population and that individuals that would not otherwise be suicidal can become suicidal while incarcerated.

9. Defendants deprived Ms. Rennaker of her right to be free from cruel and unusual punishment guaranteed to her by the United States Constitution by:

   a. Failing to screen her for suicide risk;

   b. Failing to provide for Ms. Rennaker's mental and physical health;

   c. Failing to adequately check on Ms. Rennaker while she was in their custody;

   d. Failing to adequately monitor Ms. Rennaker while she was in their custody;

   e. Failing to provide emergency medical treatment to Ms. Rennaker in a timely manner;

   f. Failing to adequately monitor the jail surveillance system which broadcasts video feed directly into the Barber County Sheriff's Office from the jail allowing 24/7 supervision of inmates such as Ms. Rennaker;

   g. Failing to properly train and supervise deputies and employees; and

  h. Failing to operate the jail in a safe manner.

  10. Defendants' actions were deliberately indifferent to Ms. Rennaker's federally-protected rights.

  11. Defendants have a history of deliberate indifference to the rights of citizens. In a recent 42 U.S.C §1983 case, Sheriff Small testified in his deposition that he was unable to say whether the life of a man he was attempting to arrest was more valuable than the life of the Sheriff's attack dog.

  12. It was common knowledge within the Barber County Sheriff's Office that Undersheriff Brewer would assault prisoners in the jail by threatening them with a shotgun loaded with deadly homemade bean bag rounds.

  13. Undersheriff Brewer is currently on bond and awaiting his criminal trial for the homicide of an unarmed citizen that Undersheriff Brewer shot and killed with a deadly homemade bean bag round on October 6, 2017.

  14. Sheriff Small, Barber County and the County's insurer were all warned multiple times prior to Ms. Rennaker's death that Undersheriff Brewer's employment should be terminated to prevent anyone else from being injured or killed. By way of example, prior to Ms. Rennaker's death, they were warned in a January 30, 2018 letter:

> "Please give serious consideration to firing Brewer. It is the right thing to do. Brewer is unfit to be in law enforcement. If he injures or kills anyone else, the Sheriff, County and KCAMP will have significant exposure and most likely, punitive damage exposure."

15. Sheriff Small recently admitted in a deposition that he failed to implement policies or procedures regarding the operation of the Barber County Jail. At the time of Ms. Rennaker's death, there were no policies and procedures regarding operation of the jail.

16. Ms. Rennaker's cell could be viewed via the closed-circuit television surveillance system in the jail. Despite having Ms. Rennaker's cell under video and audio surveillance, the Defendants failed to properly observe her via the audio and video surveillance.

17. Defendants failed to adequately check on Ms. Rennaker in her cell on a regular schedule.

18. According to Sheriff Small's deposition testimony, Defendants were aware that their dispatcher was so busy that the dispatcher was not able to keep dispatch records accurately. Likewise, the defendants were on notice that the dispatcher was similarly too busy to monitor Ms. Rennaker in her cell via the closed-circuit video and audio surveillance system.

19. Defendants violated clearly-established law regarding the serious medical and mental health needs of a prisoner and are thus not entitled to qualified immunity for the actions complained of herein.

**Jurisdiction and Venue**

20. This civil action arises under 42 U.S.C. § 1983. This Court therefore has original jurisdiction under 28 U.S.C. § 1331.

21. Venue is appropriate in this Court under 28 U.S.C. § 1391 because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

**Parties**

22. Robert Rennaker is an individual and is a resident of Kansas.

23. Robert Rennaker is the former husband and duly-appointed Administrator of the Estate of Olivia A. Rennaker, who was a resident of Barber County, Kansas, until her death on April 9, 2018.

24. Olivia Rennaker died in the Barber County Jail in Barber County, Kansas while being detained.

25. Olivia Rennaker's probate estate is pending in the District Court of Barber County, Kansas, Case Number 2019-PR-000014.

26. Robert Rennaker and Olivia Rennaker were lawfully married on November 1, 2008. They later divorced.

27. Defendant Virgil "Dusty" Brewer is, and was at all relevant times herein, the duly-appointed Undersheriff of Barber County, Kansas.

28. Defendant Lonnie Small is, and was at all relevant times herein, the duly-elected Sheriff of Barber County, Kansas.

29. Defendants Andrew Paasch and Mark Suchy were Barber County Sheriff's Office deputies at all relevant times to the claims made herein.

30. Defendant Janet Leonard was an employee of Barber County Sheriff's Office at all relevant times to the claims made herein.

31. Defendant Cheryl Seipel was employed as Dispatch Supervisor for the Barber County Sheriff's Office at all relevant times to the claims made herein.

32. All defendants are sued in their individual capacities.

33. In doing the acts and/or omissions alleged herein, Defendants Undersheriff Brewer, Sheriff Small, Deputy Paasch, Deputy Suchy and Barber County Sheriff's Office employees Cheryl Seipel and Janet Leonard acted under the color of state law.

## Facts

34. On April 4, 2018, members of the Pratt Special Response Team, Medicine Lodge Police Department, and Barber County Sheriff's Office raided two homes in Medicine Lodge, Kansas to execute search warrants.

35. During these raids, Ms. Rennaker was arrested by the Medicine Lodge Police Department for unlawful possession of a small amount of marijuana and unlawful possession of drug paraphernalia.

36. Ms. Rennaker was taken to the Barber County Jail and her bond was set at $5,000.

37. According to the Department of Justice, of prisoners who commit suicide, 47% have a history of substance abuse, 27% do so within the first 2-14 days, and 38% are held in isolation.

38. It has long been known that suicide is the leading cause of death in U.S. jails.

39. It is well-known that suicide in jail is approximately 3 ½ times greater than in the United States general population and 2 ½ times greater than suicides in state prisons.

40. It is well-known that many suicides occur in jails because inmates are not checked regularly due to staff shortages and inadequate training. In Ms. Rennaker's case, Sheriff Small has testified that his staff is so busy that he cannot trust that the dispatch log times are accurate. He further testified that in regard to training, he failed to implement any policies or procedures. Without policies and procedures, it would not be possible for Sheriff Small and Undersheriff Brewer to have adequately trained and supervised staff.

41. The Barber County Sheriff's Office maintains no policies or procedures, and provides no training to its officers for screening prisoners for suicide risk when they are taken into custody.

42. The National Center on Institutions and Alternatives study of jail suicide has been available since 2010 finding the following characteristics of jail suicides:

   a. 93% of victims used hanging. Ms. Rennaker died from hanging.

   b. 66% of the victims used bedding to commit suicide. Ms. Rennaker used her bedding to hang herself.

   c. 67% were white. Ms. Rennaker was white.

   d. 47% had a history of substance abuse. Ms. Rennaker was being held on a marijuana charge.

   e. 42% of victims were single. Ms. Rennaker was single.

   f. 69% occurred within 2 days of a hearing. Ms. Rennaker's death was within 2 days of a court hearing.

   g. 67% occurred in less than 1 day of a telephone call. Ms. Rennaker's death was within 1 day of a telephone call.

43. Upon information and belief, when Ms. Rennaker was taken into custody, no screening was conducted by the Barber County Sheriff's Office to assess whether she was suicidal.

44. While Ms. Rennaker was in custody, she was the only female prisoner in the Barber County Jail.

45. Upon Information and belief, Barber County Sheriff's Office has no suicide screening procedures in place for evaluation at the time of confinement or at any time throughout confinement.

46. Upon information and belief, Ms. Rennaker was going through withdrawal while in custody.

47. During Ms. Rennaker's confinement beginning on April 4, 2018 through the time of her death on April 9, 2018, she received no visitors.

48. During Ms. Rennaker's confinement beginning on April 4, 2018 through the time of her death on April 9, 2018, she attempted to place at least 25 phone calls, many of which were repeated attempts to the same numbers.

49. During Ms. Rennaker's confinement in the Barber County Jail, she wrote a note to "Jaime" who was apparently confined elsewhere. The note included the following: "I hope you get out soon. I know you stand a better chance than I do! I told you your mom would get you out your family is way nicer than mine. They won't even answer the phone for me now it's fucked up anyway it's obvious to me that I'm stuck here until I can get OR'ed out like always. I'm going to push that he see me Monday I hope anyway or it will be Wed or Thursday. If that's the case then I do hope you can bail me out before then."

50. On Monday, April 9, 2018, at 3:20 PM, Ms. Rennaker wrapped a fabric item around her neck while under a blanket in her cell.

51. At 3:24 PM, Ms. Rennaker climbed the bars of her cell and tied the fabric to the bars. She then jumped from the bars in an effort to hang herself.

52. The fabric Ms. Rennaker used to hang herself stretched and as a result her feet touched the floor and her hanging was ineffective. However, at 3:28 PM, Ms. Rennaker lifted her feet from the ground in her seated position to suffocate herself.

53. Ms. Rennaker was not discovered hanging in her cell until well over an hour later, at 4:52 PM.

54. Sheriff Small and Deputy Mark Suchy entered the cell at 4:53 PM. Sheriff Small cut the fabric that was hanging Ms. Rennaker's body.

55. Shortly thereafter, Dispatch Supervisor Cheryl Seipel entered the cell and checked Ms. Rennaker's body for a pulse and found none.

56. CPR and chest compressions were applied to Ms. Rennaker before EMS arrived at 4:56 PM.

57. Ms. Rennaker was placed on a backboard and removed from her cell at 5:03 PM.

58. Ms. Rennaker was later pronounced dead at Medicine Lodge Memorial Hospital.

59. At the time of Ms. Rennaker's death, Sheriff Small, Undersheriff Brewer, Deputies Suchy and Paasch, and Dispatchers Seipel and Leonard were in charge of monitoring and supervising inmates.

60. At the time of Ms. Rennaker's hanging and for more than an hour after her hanging, Defendants Small, Brewer, Paasch, Suchy, Leonard, and Seipel failed to monitor the video surveillance station which captured in real-time Ms. Rennaker's hanging and eventual death.

61. At the time of Ms. Rennaker's death and immediately before, no one went to Ms. Rennaker's cell to check on her for more than an hour.

62. Sheriff Small was responsible for assigning and supervising the activities of dispatch and jail services.

63. Undersheriff Brewer was responsible for supervising the deputies.

64. Sheriff Small is responsible for promulgating effective policies and procedures to ensure safety and well-being of detainees in the Barber County Jail.

65. Defendant Undersheriff Brewer is currently awaiting trial for the homicide of unarmed Steven Myers, who Brewer shot and killed on October 6, 2017.

66. Plaintiff found it necessary to engage the services of private counsel to vindicate their Constitutional rights. Plaintiff is therefore entitled to an award of reasonable attorneys' fees under 42 U.S.C. § 1988 in the event they prevail in this action.

**Count I – Eighth and Fourteenth Amendments (42 U.S.C. § 1983)**

67. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

68. Defendants Small, Brewer, Paasch, Suchy, Seipel, and Leonard, acting under color of state law, personally failed to adequately supervise and provide medical care to Ms. Rennaker while she was in custody which resulted in the fatal deprivation of Ms. Rennaker's Constitutional rights.

69. Defendants Small, Brewer, Paasch, and Suchy personally failed to perform any suicide risk screening to Ms. Rennaker at jail intake or any time thereafter, which resulted in the fatal deprivation of Ms. Rennaker's Constitutional rights.

70. Defendants Small, Brewer, Paasch, Suchy, Seipel, and Leonard personally ignored warning signs that Ms. Rennaker was growing more emotionally unstable during her period of confinement at the Barber County Jail, which resulted in the fatal deprivation of Ms. Rennaker's Constitutional rights.

71. On information and belief, Defendants Small, Brewer, Paasch, Suchy, Seipel, and Leonard were personally present at the Barber County Jail facility on April 9, 2018.

72. Defendants Small, Brewer, Paasch, Suchy, Seipel, and Leonard personally failed to perform adequate periodic cell checks, either in person or by viewing the 24/7 surveillance monitor, to ensure Ms. Rennaker's safety and well-being, which resulted in the fatal deprivation of Ms. Rennaker's Constitutional rights.

73. Although it was his duty and responsibility to do so, Defendant Sheriff Small, acting under color of state law, failed to adequately train and supervise Defendants Brewer, Paasch, Suchy, Seipel, and Leonard in the appropriate suicide screening and supervision of detainees while in custody at the Barber County Jail, which failure is directly linked to the deprivation of Ms. Rennaker's Constitutional rights.

74. In his role as supervisor, Sheriff Small was personally involved in the violation of Ms. Rennaker's Constitutional rights, vis-a-vis:

   a. Personally participating in the failure to perform adequate periodic cell checks for Ms. Rennaker's safety and well-being;

   b. Failing to direct or supervise subordinates to perform adequate periodic cell checks for Ms. Rennaker's safety and well-being;

   c. Knowing that his subordinates failed to perform adequate periodic cell checks for Ms. Rennaker's safety and well-being and acquiescing in that failure; and

   d. Utterly failing to promulgate, create, or implement policies and procedures to govern the conduct and responsibilities of Barber County Sheriff's Office employees.

75. Sheriff Small's acts and omissions described above set in motion a series of events that Small knew or reasonably should have known would cause the violation of Ms. Rennaker's Constitutional rights.

76. Small's complete failure to train and supervise subordinates was so grossly negligent that a Constitutional violation was almost inevitable.

77. The need for adequate policies and procedures governing the activities of Barber County Sheriff's Office employees, especially policies and procedures related to continuously

monitoring detainees and screening detainees for suicidal ideations, was so obvious, and the inadequacy so likely to result in the violation of Ms. Rennaker's Constitutional rights, that Defendant Small was deliberately indifferent to those rights.

78. Although it was his duty and responsibility to do so, Defendant Undersheriff Brewer, acting under color of state law, failed to adequately train and supervise Defendants Paasch and Suchy in the appropriate suicide screening and supervision of detainees while in custody at the Barber County Jail, which failure is directly linked to the deprivation of Ms. Rennaker's Constitutional rights.

79. In his role as supervisor, Undersheriff Brewer was personally involved in the violation of Ms. Rennaker's Constitutional rights, vis-a-vis:

    a. Personally participating in the failure to perform adequate periodic cell checks for Ms. Rennaker's safety and well-being;

    b. Failing to direct or supervise subordinates to perform adequate periodic cell checks for Ms. Rennaker's safety and well-being; and

    c. Knowing that his subordinates failed to perform adequate periodic cell checks for Ms. Rennaker's safety and well-being and acquiescing in that failure.

80. Undersheriff Brewer's acts and omissions described above set in motion a series of events that Brewer knew or reasonably should have known would cause the violation of Ms. Rennaker's Constitutional rights.

81. Brewer's complete failure to train and supervise subordinates was so grossly negligent that a Constitutional violation was almost inevitable.

82. The need for adequate training of Barber County Sheriff's Office employees, especially training related to continuously monitoring detainees and screening detainees for

suicidal ideations, was so obvious, and the inadequacy so likely to result in the violation of Ms. Rennaker's Constitutional rights, that Defendant Brewer was deliberately indifferent to those rights.

83. Defendants' conduct under color of state law violated Olivia Rennaker's right as provided under the Eighth Amendment of the U.S. Constitution, made applicable to the States by the Fourteenth Amendment, to be free from cruel and unusual punishment, including the right to adequate medical care and to be free from deliberate indifference to serious medical need.

84. Ms. Rennaker's right to be free from cruel and unusual punishment was clearly established at the time of Defendants' conduct.

85. Defendants' conduct was with deliberate indifference to Ms. Rennaker's federally-protected rights.

WHEREFORE, Plaintiff Robert Rennaker, as Administrator of the Estate of Olivia A. Rennaker, prays for relief as set forth herein.

**Count II – Survival**

86. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

87. As a result of Defendants' conduct under color of state law, Olivia Rennaker suffered immense, conscious pain and suffering after hanging in her cell.

88. Defendants did not find Olivia until over an hour after the hanging, delaying potentially life-saving medical care.

89. Olivia Rennaker could not and did not file a legal action against Defendants for such pain and suffering before her death.

WHEREFORE, Plaintiff Robert Rennaker, as Administrator of the Estate of Olivia A. Rennaker, prays for relief as set forth herein.

## Prayer for Relief

Plaintiff prays for relief against Defendants as follows:

1. For general and non-economic damages in a sum to be determined at trial;

2. For special damages in a sum to be determined at trial;

3. For reasonable funeral and burial expenses;

4. For punitive and exemplary damages in amounts to be determined at trial;

5. For reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

6. For costs and interest as allowed by law;

7. And for such other relief as the Court deems just and proper.

## Jury Demand

Plaintiff hereby demands trial by jury on all claims so triable.

## Designation of Place of Trial

Pursuant to Local Rule 40.2, Plaintiff designates Kansas City as the place of trial.


Respectfully submitted:

*/s/ Michael T. Crabb*
Michael J. Kuckelman    KS #14587
Michael T. Crabb    KS #24395
Kuckelman Torline Kirkland, LLC
10740 Nall Ave., Suite 250
Overland Park, KS 66211
913-948-8610 (phone)    913-948-8611 (fax)
mkuckelman@ktk-law.com
mcrabb@ktk-law.com

***Attorneys for Plaintiff***