## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**ROBERT RENNAKER, as Administrator**
**of the Estate of OLIVIA A. RENNAKER,**

**Plaintiff,**

**Case No. 2:20-cv-02165-SAC-GEB**

**v.**

**VIRGIL BREWER, et al.,**

**Defendants.**

## MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT
## SHERIFF LONNIE SMALL TO DISMISS AMENDED COMPLAINT

Defendant Sheriff Lonnie Small ("Small"), by undersigned counsel, respectfully provides the following Memorandum in Support of his Motion to Dismiss Amended Complaint.

**I.      Nature of the Case.**

In Plaintiff's Amended Complaint, Plaintiff seeks to assert claims on behalf of the estate of Olivia Rennaker (hereafter, the "Decedent"), who committed suicide by hanging during her detention at the Barber County Jail.  Plaintiff first attempts, in Count I, to assert claims under 42 U.S.C. § 1983 on behalf of the Decedent's estate for violation of the Decedent's civil rights, contending that those rights were violated due to the Defendants' failure to screen the Decedent for suicide risk, by failing to sufficiently monitor the Decedent's activities, or to otherwise take action to prevent the Decedent's suicide.  In Count II, Plaintiff also attempts to assert a claim for survival, for the Decedent's conscious pain and suffering that Plaintiff alleges the Decedent experienced during her self-inflicted hanging.  It is unclear whether this latter claim is also seeking to assert claims under 42 U.S.C. § 1983, or whether this is an attempt to assert a state law survival claim based upon pendent subject matter jurisdiction.

II.    **Factual[1] and Procedural Background.**

The Decedent was arrested on or about April 4, 2018, during the execution of a search warrant at a residence in Medicine Lodge, Kansas.  [Doc. 2 at 7.]  Her arrest was the result of her being found in possession of marijuana and drug paraphernalia during that search.  [Id.]  Following her arrest, she was booked into the Barber County Jail.  [Id.]

On April 9, 2018, at approximately 3:24 p.m., the Decedent committed suicide in her jail cell by hanging herself with a piece of fabric that she tied to the bars of her cell.  [Id. at 8.]  Jail staff discovered her roughly ninety minutes later, at 4:52 p.m.  [Id.[2]]  CPR was initiated until EMS personnel arrived, but the Decedent was declared deceased at Medicine Lodge Memorial Hospital later that day.  [Id. at 9.]

Plaintiff's Amended Complaint attempts to assert claims asserting that the Decedent's constitutional rights to be free of cruel and unusual punishment were violated by Defendant Small in several fashions:[3] (a) failed to screen the Decedent for suicide risk; (b) failed to adequately check or monitor the Decedent while in custody; (c) failed to provide timely emergency medical treatment; (d) failed to train and supervise subordinates; and (e) failed to

---

[1] For purposes of the present Motion, the Court is obligated to treat all well-pleaded allegations of the Amended Complaint as true.  See Robbins v. Oklahoma, 519 F.3d 1242, 1249 (10th Cir. 2008).  In light of this requirement, Defendant Small will treat those allegations as true, solely for purposes of the present motion.  Defendant Small reserves the right to contest any and all of Plaintiff's fact allegations, and nothing in this Memorandum (or Defendant Small's other briefing on this motion), should be construed as an admission or concession regarding the truth of any of Plaintiff's allegations beyond the present motion.

[2] While the Amended Complaint alleges that Sheriff Small was one of the persons who discovered the Decedent, he was not present on the jail on that date.  However, the identity of the persons who discovered the Decedent's suicide is immaterial to the present motion.

[3] While the Amended Complaint references eight items, three of them (items c, d, and f) raise essentially the same issue, the failure to monitor/check/observe the Decedent.

operate the jail in the safe manner.  [Doc. 2, at 2-3.]  Count I seeks damages on behalf of the

Decedent's estate for the alleged constitutional violations under 42 U.S.C. § 1983.  Count II

asserts a survival claim[4] for the conscious pain and suffering allegedly experienced by the

Decedent during her suicide.  The claims against Defendant Small are premised both on the basis

of his alleged direct involvement with the Decedent while in custody and on the grounds of

supervisory liability, specifically Defendant Small's alleged failure to train, supervise, or

promulgate policies that Plaintiff alleges would have prevented the Decedent's suicide.  [*See*

*generally* Doc. 2.]


**III.    Issues Presented.**

> **1.    Does Plaintiff's Amended Complaint fail to state a claim on the basis that there is no constitutional right to suicide screening or suicide prevention protocols?**

> **2.    Does Plaintiff's Amended Complaint fail to state a claim on the basis that the allegations fail to demonstrate a constitutional violation (specifically, that Defendants knew of and were deliberately indifferent to the Decedent's substantial risk of suicide)?**

> **3.    Does Plaintiff's Amended Complaint fail to state a claim because the purported constitutional rights Plaintiff invokes were not clearly established at the time of the Decedent's suicide?**

> **4.    Does Plaintiff's Amended Complaint fail to state a claim against Defendant Small on the basis of supervisory liability because (1) it fails to demonstrate a constitutional violation by his subordinates or (2) it fails to demonstrate that Defendant Small had particularized knowledge that the Decedent presented a substantial risk of suicide?**

---

[4] It is not entirely clear whether the latter Count is also asserted as a claim under 42 U.S.C. § 1983, or whether it is seeking to assert a claim under an unspecified state law tort theory.  Count II seeks damages arising from "Defendants' conduct under color of state law," suggesting that the claim is asserted under Section 1983.  However, in the event Plaintiff's Amended Complaint is also attempting to assert claims under state law, such claims are addressed *infra* at Section IV.D.

5.      To the extent (if any) that Plaintiff's survival claim in Count II is intended to
assert claims under Kansas state law, should the court decline to exercise
supplemental jurisdiction over those claims?

IV.     Arguments and Authorities.

A.      Standard of Review.

In determining the sufficiency of a complaint under Fed. R. Civ. P. 12(b)(6), the Court

must first examine the elements of the cause of action and then follow a two-step analysis in

which the court "identif[ies] conclusory allegations not entitled to the assumption of truth" and

then "determine[s] whether the remaining factual allegations plausibly suggest the plaintiff is

entitled to relief." *Boilermaker-Blacksmith Nat. Pension Fund v. Lintec Corp.*, 10-2409-JTM,

2011 WL 1303359, at *1 (D. Kan. Apr. 6, 2011).  The plaintiff's burden is to "frame its

complaint with enough factual matter" to show the court that relief may be appropriate. *Kansas*

*W. Annual Conference of United Methodist Church v. Robotech Elec. Components, Inc.*, CIV.A.

11-1171-KHV, 2011 WL 3799759, at *1 (D. Kan. Aug. 25, 2011).  The same standard of review

is also applicable to a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). *Ward v.*

*Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003).


With regard Defendant Small's qualified immunity, Plaintiff faces a two-prong burden to

overcome that immunity. *See Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015).  First,

Plaintiff must demonstrate a constitutional violation occurred, and second Plaintiff must show

that the constitutional right at issue was clearly established at the time of the Defendant's

conduct.  *See id.* The second prong is met only where there is "a Supreme Court or Tenth Circuit

decision on point, or the clearly established weight of authority from other courts" finds "the law

to be as the plaintiff maintains." *Stearns v. Clarkson,* 615 F.3d 1278, 1282 (10th Cir.2010).  To

be clearly established, the extant precedent must place "the statutory or constitutional question beyond debate." *Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018). "The purpose of the qualified-immunity test is to limit liability to those public officials who are 'plainly incompetent or ... knowingly violate the law.'" *Id.* This court has the discretion to choose which of the two prongs of this test it considers first. *See id.* at 1167.

In the context of a motion to dismiss where qualified immunity claims are raised, this Court must consider whether the well-pleaded allegations of the Amended Complaint nudge Plaintiff's claims "'across the line from conceivable to plausible'" by "alleg[ing] facts sufficient to show (assuming they are true) that the defendants plausibly violated [an individual's] constitutional rights and that those rights were clearly established at the time." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). "[I]t is 'particularly important' that 'the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.'" *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) (quoting *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210 (10th Cir.2011)).

### B.     Dismissal Of The Section 1983 Claims Is Proper, Either Due To The Absence Of A Constitutional Violation Or Because The Constitutional Rights Alleged Are Not Clearly Established.

As discussed in the following sections, up to the present time, neither the U.S. Supreme Court nor the Tenth Circuit has recognized any constitutional right for a jail detainee to be protected from suicide by suicide screening or other "suicide prevention" protocols. Plaintiff also appears to argue that the Decedent's suicide was also the result of the failure to provide

medical care to the Decedent or a failure to adequately supervise her.  Defendant Small will

demonstrate that even viewing Plaintiff's allegations under the most favorable light,  those

theories are also claims are subject to dismissal, either due to the absence of a constitutional

violation or because dismissal is proper the basis of qualified immunity.

       **1.**      **Plaintiff's Claims Premised Upon An Alleged Constitutional Deprivation For Failure To Perform A Suicide Risk Screening Must Be Dismissed Because A Pretrial Detainee Has No Constitutional Right To Suicide Screening Or Other Suicide Prevention Protocols.**

     In the Complaint, Plaintiff's claims appear to be based (in whole or in part) upon a

contention that Defendants "personally failed to perform any suicide risk screening to [the

Decedent] at jail intake or any time thereafter, which resulted in the fatal deprivation of [the

Decedent's] Constitutional rights."  [Doc. 2, at 10.]  Plaintiff's claims under 42 U.S.C. § 1983

premised upon this allegation, however, fail as a matter of law, as controlling precedent clearly

concludes that there is no such right.  In *Taylor v. Barkes*, the U.S. Supreme Court observed:

> No decision of this Court establishes a right to the proper
> implementation of adequate suicide prevention protocols. No
> decision of this Court even discusses suicide screening or
> prevention protocols.

*Taylor v. Barkes*, 575 U.S. 822, 135 S. Ct. 2042, 2044, 192 L. Ed. 2d 78 (2015).  In the nearly

five years between the issuance of *Taylor* and present, the Supreme Court has issued no

decisions recognizing such a right.  Nor do there appear to be any subsequent Tenth Circuit

decisions recognizing such a constitutional right to suicide screening or prevention protocols.

     Nor can Plaintiff demonstrate that there is any "clearly established weight of authority"

from other courts recognizing such a general constitutional right to suicide screening or

prevention protocols.  The absence of Tenth Circuit or Supreme Court recognition of such a right

weighs against a finding that such a right is "clearly established."  To the extent other circuits have addressed such issues, they appear to conclude that suicide screening might only rise to the level of a constitutional right where officials are aware that a particular detainee presents a danger of suicide.  For example, the Sixth Circuit has held that "A pretrial detainee does not have a general constitutional right to receive a suicide screening or to be placed on suicide watch unless she manifests "a strong likelihood of committing suicide." *Andrews v. Wayne County, Michigan*, 957 F.3d 714, 721 (6th Cir. 2020).  As discussed in the following sections, the Amended Complaint fails to demonstrate that the Decedent had *any* substantial suicide risk, let alone a "strong likelihood thereof."

Given the absence of a clearly established weight of authority at the time of the Decedent's suicide in 2018 that a detainee had a right to suicide screening or prevention protocols, this Court should conclude that such a right was not "clearly established" as of that point in time, and grant Defendant Small dismissal of Plaintiff's claims arising from the failure to provide suicide screening or prevention protocols.

2.      **The Allegations Of The Amended Complaint Do Not Assert A Constitutional Deprivation Arising From A Failure Provide Medical Treatment.**

In the Tenth Circuit, "claims based on a jail suicide are considered and treated as claims based on the failure of jail officials to provide medical care for those in their custody."  *Barrie v. Grand County, Utah*, 119 F.3d 862, 866 (10th Cir. 1997).  *See also, Cox*, 800 F.3d at 1248. Generally, the failure to provide medical treatment does not rise to the level of a constitutional

violation unless the jailer's[5] conduct rises to the level of deliberate indifference to the detainee's serious medical needs. *See id.* (citing *Estate of Hocker ex rel. Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir.1994); *Martin v. Bd. of Cty. Comm'rs*, 909 F.2d 402, 406 (10th Cir.1990). A showing of deliberate indifference involves both an objective and a subjective component, however as suicide "plainly qualifies as sufficiently serious," the objective component is typically not at issue, leaving the primary focus on the subjective component.

The subjective component requires a showing that the jail official knew (or was aware of circumstances so obvious that he should have known) that the detainee faced a substantial risk of harm and failed to take action to abate that risk. *See, e.g., Estate of Vallina v. County of Teller Sheriff's Office*, 757 Fed. Appx. 643, 646 (10th Cir. 2018). In the context of jail suicide, the Tenth Circuit has held that a plaintiff must demonstrate that the defendant had "knowledge that the *specific* inmate at issue presented a *substantial* risk of suicide" in order to demonstrate deliberate indifference. *Cox*, 800 F.3d at 1250 (italics added).[6]

This is a high threshold for Plaintiff to meet, as it entails a demonstration that either that Defendant Small had *actual knowledge* that the decedent would commit suicide or had constructive knowledge because the decedent's risk of suicide "was *so substantial or pervasive* that knowledge can be inferred." *Estate of Hocker by Hocker v. Walsh*, 22 F.3d 995, 1000 (10th Cir. 1994) (italics added). Here, Plaintiff's allegations, even taken as true, fall far short of either

---

[5] The same standard applies to pretrial detainees as it does to convicted inmates. *Barrie*, 119 F.3d at 867-69.

[6] It should be noted that in *Cox,* the Tenth Circuit's decision rested upon the second prong of the qualified immunity analysis – the question of whether a right to proper prison suicide screening during booking was clearly established, and simply assumed, without holding, that a constitutional violation occurred. *See Perry v. Durborow*, 892 F.3d 1116, 1124 (10th Cir. 2018).

showing.  First, there is no allegation that Defendant Small had actual knowledge that the Decedent intended to commit suicide.  Second, the allegations do not suffice to demonstrate that the risk of the Decedent committing suicide was so substantial or pervasive that knowledge on his part could be reasonably inferred.

Plaintiff's allegations bearing upon the Decedent's purported risk of suicide fall into two main categories.  First, Plaintiff cites and relies upon statistics from the National Center on Institutions and Alternatives (NCAI), which Plaintiff asserts demonstrate that the Decedent had an elevated risk of suicide.  Second, Plaintiff points to a number of alleged factual circumstances that purportedly increased the Decedent's risk of suicidal behavior.  The allegations in neither of these categories, either separately or taken together, demonstrate that Defendant Small had actual knowledge that the Decedent would commit suicide or that the risk factors applicable to the Decedent (and known to Defendant Small) were so substantial and pervasive that it would have been obvious to Defendant Small that the Decedent presented a substantial risk of suicide. Because Plaintiff cites and relies upon the 2010 NCAI study of jail suicide within her Amended Complaint, that study (attached hereto as Exhibit A), may be considered part of Plaintiff's pleading.  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

Turning to the details of Plaintiff's statistical arguments in the Amended Complaint, Plaintiff contends that the NCAI statistics reflect that the Decedent had an increased risk of suicide because she was still in the early days of her confinement, she was single, she had a history of substance abuse, and she was within close temporal proximity of a court hearing and/or a telephone call. [Doc. 2 at 7.]  Plaintiff's reliance on the NCIA statistics, however, does not demonstrate that the Defendants had actual knowledge that Decedent had a *substantial* risk

of suicide. Nor do the yield facts from which one could conclude that the Decedent presented an obviously substantial risk of suicide.  Indeed, the NCIA statistics Plaintiff relies upon reflect a suicide rate of 36 deaths per 100,000 inmates, equating to a suicide rate of 0.036%, which can hardly be considered "substantial." [Exhibit A, NCIA Suicide Study, at 5 (PDF page 21).] Further, the study observes that "male inmates had higher rates of suicide than female inmates." [*Id.*] In fact, out of the suicides included in the study, only seven percent (7%) involved female detainees/inmates. [*Id.* at 12 (PDF page 28).]  This suggests that the Decedent's gender was indicative of a *lower* risk of suicide.  Similarly, Plaintiff's reliance on statistics relating to the percentage of persons committing suicide who were single[7] or who had received a telephone call[8] do not lend support for an argument that the Decedent was at an elevated risk of suicide, even viewed in the light most favorable to Plaintiff.  More fundamentally, these statistics do not assist Plaintiff in demonstrating the *Defendants'* knowledge of the Decedent's risk of suicide, as there is no allegation that any of the Defendants were aware of this study or its conclusions.  In other words, the NCAI statistics, even assumed to be true and accurate, do not admit any conclusion that Defendants should have known that the Decedent presented a substantial risk of suicide.

---

[7] Plaintiff's reliance on this statistic does not support the conclusion that the Decedent had an elevated risk of suicide.  Only 42% of the suicides included in the NCIA study were single, and by extension 58% were *not* single. This, in turn, suggests that the Decedent's status as a single individual placed her at a statistically *lower* risk of suicide than a non-single detainee.

[8] The NCIA data discuss temporal proximity to the detainee's receipt of a telephone call or a visit. [*See* Exhibit A, at 30-32 (PDF page 46-48).]  The data does not break out the suicide rates those occurring near calls and those near visits. [*See id.*]  Moreover, the study appears to discuss calls and visits in which contact was made. [*See id.*]  Plaintiff's allegations, though, appear to suggest that the calls made by the Decedent did not result in any contact with the called parties.  As such, the relevance of this aspect of the NCIA study is questionable.

With regard to circumstances particular to the Decedent, Plaintiff alleges: (1) The Decedent was the sole female detainee in the jail; (2) Decedent was experiencing withdrawal from an unspecified drug; (3) the Decedent received no visitors during her detention; (4) the Decedent attempted to make 25 phone calls during her confinement and that many of them were to the same phone numbers; (5) the Decedent wrote a note to "Jaime" (an individual apparently confined elsewhere) expressing that the Decedent's family wouldn't bail her out or take her calls. [Doc. 2, at 7-8.] The Amended Complaint does not expressly assert that either Defendant Small or any or the other Defendants were aware of these circumstances. Nor are many of them of the nature where such knowledge can be inferred (such as the number of attempted phone calls or the alleged letter to Jaime). Plaintiff also characterizes the Decedent as exhibiting "warning signs" that she "growing more emotionally unstable during her period of confinement." [*Id.* at 10.] However, Plaintiff's allegations does not appear to explain or detail what those "warning signs" were.

These vague allegations do not demonstrate any basis that would support a conclusion that Defendant Small had knowledge of any circumstances particular to the Decedent that she presented a substantial risk of suicide. At most, the allegations of the Amended Complaint assert that the Decedent had exhibited signs of emotional distress or instability. District courts in this Circuit have generally concluded that a detainee suffering from anxiety, depression, or emotional outbursts, or even telling others that they could not "take it anymore" fail to put jail staff on particularized notice that an individual has a substantial risk of suicide. *See, e.g., Bowles v. Filsinger*, 18-CV-02917-CMA-MEH, 2020 WL 70423, at *5 (D. Colo. Jan. 7, 2020) (allegations that inmate had anxiety or depression insufficient to show knowledge on the part of defendant); *Johnson v. Bd. of County Commissioners of County of Laramie, Wyoming*, 2:17-CV-0209-SWS,

2019 WL 3535814, at *10 (D. Wyo. Aug. 1, 2019) (emotional outburst in court and crying not sufficient to establish knowledge that detainee posed substantial risk of suicide); *Powell v. Bd. of County Commissioners of Oklahoma County*, CIV-18-294-D, 2019 WL 2238022, at *6 (W.D. Okla. May 23, 2019) (detainee's depression, reports of "hearing voices," and telling others that she could not "take it anymore" did not demonstrate substantial risk of suicide).

In contrast, the district courts in this Circuit that have reached a conclusion that officers or supervisors may have had sufficient basis to know that a particular detainee presented a substantial risk of suicide involve factual underpinnings that are utterly absent here.  For example, in *Estate of Sisk v. Manzanares*, 262 F. Supp. 2d 1162 (D. Kan. 2002), jail officials were warned by a detainee's mother that the detainee had made threats that he would kill himself and a search of the detainee's cell revealed a note that was considered to be a suicide note. *See id.* at 1167.  In *Partridge v. Pelle*, 17-CV-02941-CMA-STV, 2019 WL 1045840, at *12 (D. Colo. Mar. 5, 2019), a question of fact as to whether prison officials had sufficient reason to know of a prisoner's substantial risk of suicide, based upon the prisoner's serious mental health issues and a history of committing serious self harm (which included the prisoner gouging out his own eyes). *Id.* at *10.

Here, there are no allegations in the Amended Complaint that the Decedent had any prior history of being placed on suicide watch (let alone having had that history communicated to Defendants), nor is there any history that the Decedent had a prior history of self-harm prior to her suicide attempt or any basis for Defendants to be aware of such a history.  [*See generally*, Doc. 2.]  Nor are there any allegations that Defendant Small (or others) received reports that Decedent had previously exhibited suicidal behavior. *See Gaston v. Ploeger*, 229 Fed. Appx.

12

702, 711 (10th Cir. 2007).  In short, the Amended Complaint is devoid of allegations which would satisfy the "rigorous" standard of demonstrating "knowledge that an inmate is suicidal or a risk that is so obvious and substantial that knowledge can be inferred." *Id.* at 712.  Absent allegations sufficient to demonstrate that Defendant Small (or indeed any of the Defendants) knew that the Decedent posed a specific and substantial risk of suicide, or knew of circumstances so obvious that knowledge of the risk to the Decedent could be inferred, Plaintiff cannot, in turn, demonstrate that Defendant Small or any of the other Defendants was deliberately indifferent to that risk.  Accordingly, Plaintiff's claim fails as a matter of law on the face of Plaintiff's own pleadings.

> **3.    The Allegations Of The Amended Complaint Do Not Demonstrate A Constitutional Violation On The Grounds Of Failure To Adequately Monitor The Decedent Or A Clearly Established Constitutional Right To Such Monitoring.**

Plaintiff also contends in the Amended Complaint that Defendant Small should be held liable under Section 1983 on the grounds that he either personally failed to adequately monitor the Decedent or to cause her to be monitored.  This contention fails to state a claim, either due to the absence of constitutional violation or on the basis that a right is not clearly established, meriting dismissal on the basis of qualified immunity.

A detainee has no constitutional right to constant monitoring while he or she is detained. *See Gaston v. Ploeger*, 229 Fed. Appx. 702, 711 (10th Cir. 2007).[9]  Moreover, mere negligence

---

[9] *See also*, *Long v. Collins*, CIV. A. 89-0901, 1990 WL 67222, at *4 (E.D. Pa. May 18, 1990), *aff'd,* 947 F.2d 936 (3d Cir. 1991)("where there is no sign of a suicidal propensity, the failure to provide constant supervision does not amount to deliberate indifference").

in failing to monitor a detainee that results in harm to the detainee (whether due to self-harm or harm by others) is insufficient to give rise to a claim under 42 U.S.C. § 1983. *See Berry v. City of Muskogee, Okl.*, 900 F.2d 1489, 1495 (10th Cir. 1990).  Rather, the Tenth Circuit has held that the "deliberate indifference" standard also applies to claims that jailers failed to adequately monitor a detainee and thereby prevent harm to that individual. *See id.*

To establish deliberate indifference in this context, a plaintiff must plead (and ultimately prove) that the defendant deliberately disregarded a "known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights."  *See id.* at 1496.  As discussed above, in the context of jail suicide, the Tenth Circuit applies a more rigorous standard for demonstrating "deliberate indifference." As such, it is not sufficient for a plaintiff to plead allegations suggesting generalized risk of jail suicide, but rather the allegations must demonstrate a basis for knowledge on the part of the defendant that the detainee or inmate posed a substantial risk of suicide.  For the reasons stated in the previous section, the Amended Complaint fails to make that demonstration and does not admit any reasonable inference that would satisfy that demonstration.

While Plaintiff pleads that approximately ninety minutes passed from the time that the Decedent first began to hang herself until jail staff later discovered her, Defendant is aware of no Tenth Circuit precedent that has held that a ninety-minute interval between observations of a jail detainee rises to the level of deliberate indifference.  Indeed, despite a nationwide search, Defendant's counsel has been unable to locate any appellate precedent (from the Tenth Circuit or any other Circuit Court) which has opined that a exceeding a particular elapsed time between monitoring checks of a jail detainee or prisoner rises to the level of deliberate indifference in the

context of jail or prison suicide.  In the absence of such precedent, there is little, if any legal basis to support a conclusion that the alleged failure to monitor the Decedent's activities violated a constitutional right of the Decedent.

However, even if there might exist some basis to conclude that there is some precedential basis to find that a constitutional right was violated due to the elapsed time between observations of the Decedent, the absence of Tenth Circuit, Supreme Court, or other circuit court authority providing constitutional guidance as to the frequency of checks on a jail detainee to prevent their suicide requires this Court to conclude that Defendant Small is entitled to qualified immunity on the grounds that a constitutional right was not "clearly established" at the time of the incident. Therefore, Defendant Small is entitled to dismissal either because the Amended Complaint does not assert a constitutional violation in this context or, alternatively, because he is entitled to dismissal under the doctrine of qualified immunity because the constitutional right is not clearly established.

      **4.**     **Plaintiff's Amended Petition Does Not State A Claim Against Defendant Small Under A Theory That He Failed To Provide Timely Emergency Medical Treatment.**

Claims asserting that there has been a constitutional deprivation due to the failure to provide emergency medical treatment are analyzed under the same framework as other claims involving the failure to provide medical treatment.  The test does not differ between pretrial detainees and convicted inmates. *Estate of Booker v. Gomez*, 745 F.3d 405, 429 (10th Cir. 2014). A plaintiff must plead and prove the deliberate indifference of the defendant under two prongs. *See Kellum v. Mares*, 657 Fed. Appx. 763, 767 (10th Cir. 2016).  First, there must be an objective demonstration of a substantial risk of harm to the detainee.  *See id.*  Second, a plaintiff

must demonstrate a subjective component, that the defendant officer both knew of and disregarded an excessive risk to health or safety. *See id.* It is insufficient to present facts showing that the officer should have been aware of the risk, as the plaintiff must show that the defendant was actually aware of the risk. *See id.* This presents "a high evidentiary hurdle to the plaintiffs" in which the defendant officer "must know about and disregard a substantial risk of serious harm." *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006).

Further, when the allegations at issue concern the *timeliness* of the provision of medical treatment, a plaintiff must demonstrate that the delay resulted in substantial harm to the detainee. *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001). However, because Plaintiff's burden is to demonstrate the Defendant's actual knowledge of the circumstances necessitating medical treatment, it follows that the relevant time period for assessing whether medical treatment has been delayed is the interval between when the official first becomes aware of the risk to the detainee to when treatment is sought.

Here, the allegations of the Amended Complaint allege that Defendants first became aware that the Decedent was engaged in a suicide attempt at 4:52 p.m. on April 9, 2018. [Doc. 2, at 10.] That pleading also asserts that EMS personnel entered the cell *four minutes* later, at 4:56 p.m. [*Id.*] This suggests that the call for EMS assistance occurred essentially immediately upon discovery of the Decedent. Prior to the arrival of EMS, CPR had already been started, and there is no allegation that initiation of CPR was delayed in any manner. [*Id.* at 11.] The Decedent was transported out of the cell she was occupying seven minutes later, at 5:03 p.m., and taken to Medicine Lodge Memorial Hospital. [*Id.*] The pleaded circumstances do not support a conclusion that Defendants disregarded a substantial risk of harm to the Decedent upon

discovery of her attempt at suicide at 4:52 p.m.  Rather, the pleaded allegations reflect that swift action was taken to provide treatment, first via CPR, then via treatment and transport by EMS personnel, and then treatment at the hospital.

Instead, Plaintiff may be attempting to assert that the "delay" at issue is the elapsed time from the start of the Decedent's suicide attempt and the provision of medical treatment. However, framed as such, the pleaded claim cannot satisfy the deliberate indifference test.  In order to demonstrate reckless disregard, Plaintiff must plead that the Defendant Small *knew* of circumstances that necessitated a need for prompt medical treatment and disregarded those circumstances and the accompanying risk of substantial harm to the Decedent.  *See Mata v. Saiz*, 427 F.3d 745, 756 (10th Cir. 2005) (discussing whether the defendant "knew of and disregarded an excessive risk" to an inmate's health and safety).

As such, the "delay" in a delay-of-treatment claim concerns the delay between when the defendant officer becomes aware of circumstances necessitating medical treatment and the provision of that treatment. *See, e.g., Kellum v. Mares*, 657 Fed. Appx. 763, 769 (10th Cir. 2016) (discussing delay from time defendant first became aware of inmate's symptoms).

Here, there are no pleaded allegations that Defendant Small (or indeed of any of the other Defendants) were aware of the Decedent's suicide attempt prior to 4:52 p.m.  Simply put, that is the earliest point in time that the subjective prong of the reckless indifference analysis could conceivably be met under the present allegations.  Prior to that time, under the current allegations, there is no basis to either deduce or infer that Defendant Small (or the other Defendants) were actually aware that the Decedent was facing a serious and substantial risk of

harm.  Absent such a basis, the reckless indifference test cannot be met, entitling Defendant

Small to dismissal.


      **C.**      **The Allegations Of The Amended Complaint Fail To State A Claim Against Defendant Small On The Basis Of Supervisory Liability Or, Alternatively He Is Entitled To Qualified Immunity Upon Those Claims.**

      Lastly, Plaintiff attempts to assert liability against Defendant Small on the grounds that

he failed to train and supervise his subordinates or otherwise failed to act to operate the jail in a

safe manner, and that such failures resulted in the alleged constitutional deprivation of the

Decedent's rights.  These are efforts to assert claims against Defendant Small under a

supervisory liability theory. "Because vicarious liability is inapplicable to ... § 1983 suits, a

plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct.

1937, 173 L.Ed.2d 868 (2009).  This means that, in order to assert a supervisory liability claim

against a defendant, there must be a constitutional violation linked to the defendant's personal

participation. *See Martinez v. Beggs*, 563 F.3d 1082, 1091-92 (10th Cir. 2009); *Fogarty v.*

*Gallegos*, 523 F.3d 1147, 1162 (10th Cir.2008).


      Moreover, there must be a demonstration that the defendant acted with at least the same

state of mind necessary to establish the alleged constitutional violation by the subordinates

directly involved in the violation.  *Cox v. Glanz*, 800 F.3d 1231, 1249 (10th Cir. 2015). "[T]his is

a *particularized* state of mind: actual knowledge by a prison official of an individual inmate's

substantial risk of suicide." *Id.*  This means that Plaintiff, here, must not just demonstrate that

Defendant Small was aware that his failure to train, set policies, or supervise presented a risk of

giving rise to a constitutional violation, but that Defendant Small had particularized knowledge

that the Decedent presented a substantial risk of suicide. *See id.* at 1251-52.  For the reasons

stated above, however, the Amended Complaint fails to meet this burden, even viewing the

factual allegations in the light most favorable to Plaintiff.  Moreover, where a complaint fails to

allege grounds by which the subordinate officers' conduct was deliberately indifferent, claims of

failure to supervise or failure to implement policies also fail, because of the lack of showing that

inadequate training or enforcement of policies led to deliberate indifference of a detainee's

medical needs.  *See Estate of Vallina v. County of Teller Sheriff's Office*, 757 Fed. Appx. 643,

647 (10th Cir. 2018); *Estate of Stevens ex rel. Collins v. Bd. of Com'rs of County of San Juan*, 53

F. Supp. 3d 1368, 1375 (D.N.M. 2014).


Turning to the allegations of the case at bar, for the reasons discussed above, Plaintiff's

allegations in the Amended Complaint fail to demonstrate deliberate indifference on the part of

Defendant Small or his subordinates.  As the claims against Defendant Small's subordinates fail

to state a claim due to the absence of a constitutional violation, Defendant Small is also entitled

to dismissal of the supervisory liability claims asserted against him.


Moreover, the Amended Complaint fails to set forth allegations which, if true, would

overcome Defendant Small's defense of qualified immunity.  In the supervisory liability context,

a plaintiff must demonstrate not only that a constitutional violation occurred, but also that the

constitutional right at issue was clearly established at the time of the defendant's conduct.  *See*

*Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018).  This requires plaintiff to "'identify a

case where an offic[ial] acting under similar circumstances as [the defendant] was held to have

violated' the Constitution." *Id.* (quoting *White v. Pauly*, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463

(2017)). Here, the Amended Complaint does not make that demonstration, and for the reasons

discussed in the preceding sections, it does not appear that Plaintiff would be able to make that showing, here.  Plaintiff contends that Defendant Small should be held liable for failure to supervise, train, or set policy, whether by not implementing suicide screening, not mandating monitoring/observation of detainees on a set schedule or frequency, or his purported failure to ensure that detainees were adequately cared for.  However, as demonstrated above, there is a dearth of precedent establishing clearly established rights to suicide screening or prevention protocols, a right to medical treatment for suicide prevention under comparable factual scenarios to those pleaded in the Amended Complaint, or a right to be monitored with any particular degree of frequency for the purpose of suicide prevention.  Nor was there clearly established authority at the time of the Decedent's death that a sheriff must "supervise and train jail personnel to ensure that they take reasonable steps to protect a detainee" from suicide, even under circumstances (which are not present here) where jail personnel know that the detainee presents a substantial suicide risk.  *See Hockensmith v. Minor*, 18-CV-00671-STV, 2018 WL 6528117, at *8-9 (D. Colo. Dec. 11, 2018).  Given this, qualified immunity applies to these claims, and Defendant Small is entitled to dismissal of the supervisory liability claims that Plaintiff seeks to assert in this matter.

> **D.   The Survival Claim In Count II Should Also Be Dismissed, Either On The Grounds Stated Above, Or If Count II Is Intended To Assert State Law Claims, Supplemental Jurisdiction Should Be Declined.**

It is not entirely clear whether the "Survival" claim discussed in Count II of the Amended Complaint is intended to assert claims under 42 U.S.C. § 1983, or whether it is instead intended to assert claims under Kansas state law.  To the extent that the claims in that count are asserted under 42 U.S.C. § 1983, they fail for the same reasons discussed in the preceding sections, due to failure to demonstrate a constitutional violation and the existence of a clearly established

constitutional right.  However, if Count II is intended to assert state law claims, Defendant Small respectfully requests that the Court to decline the exercise of supplemental jurisdiction over those claims should the Court conclude that dismissal of Plaintiff's federal claims is proper.

In similar circumstances, where federal claims arising out of a jail or prison suicide were subject to dismissal, the Tenth Circuit has held that it is the "preferred practice" for district courts to decline to exercise supplemental jurisdiction over the companion state law claims.  *See e.g., Gaston v. Ploeger*, 297 Fed. Appx. 738, 746 (10th Cir. 2008) (citing collected cases).  While the decision whether or not to exercise supplemental jurisdiction is a discretionary one, if federal claims against a defendant are dismissed prior to trial, a district court should decline the exercise of supplemental jurisdiction and dismiss the remaining state law claims without prejudice.  *See Hubbard v. Oklahoma ex rel. Oklahoma Dep't of Human Services*, 759 Fed. Appx. 693, 713 (10th Cir. 2018).

Accordingly, if this Court concludes that the federal claims asserted against Defendant Small are subject to dismissal, then Defendant Small respectfully requests that the Court decline supplemental jurisdiction over any remaining state law claims, dismissing those remaining claims (if any) against him.

Wherefore, Defendant Sheriff Lonnie Small respectfully requests that the Court dismiss Counts I and II of the Amended Complaint, and grant such other relief as Defendant Small may show himself entitled and the Court deems to be reasonable, appropriate, and just.

Respectfully submitted,

**Case Linden P.C.**


s/ Kevin D. Case
Kevin D. Case, KS 14570
Patric S. Linden, KS 18305
2600 Grand Boulevard, Suite 300
Kansas City, MO  64108
Tel:  (816) 979-1500
Fax:  (816) 979-1501
kevin.case@caselinden.com
patric.linden@caselinden.com
Attorneys for Defendant Sheriff Lonnie Small

## Certificate of Service

I hereby certify that on June 1, 2020, a true and correct copy of the above and foregoing was served by electronic filing with the Clerk of the Court in the CM/ECF system, which will automatically send email notification of such filing to the following counsel of record:

Michael J. Kuckelman
Michael T. Crabb
Kuckelman Torline Kirkland, LLC
10740 Nall Ave., Ste. 250
Overland Park, KS  66211
mkuckelman@ktk-law.com
mcrabb@ktklattorneys.com
Attorneys for Plaintiff


s/ Kevin D. Case
Kevin D. Case