IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROBERT RENNAKER, as Administrator, )
Of the Estate of OLIVIA A. RENNAKER )
                                                         )
      Plaintiff, )
v. ) Case No. 2:20-cv-02165-SAC-GEB
                                                         )
VIRGIL BREWER, LONNIE SMALL, )
ANDREW PAASCH, MARK SUCHY, )
JANET LEONARD, and CHERYL SEIPEL, )
      Defendants. )

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS
PAASCH, SUCHY, AND LEONARD'S MOTION TO DISMISS (DOC. 16)**

Michael J. Kuckelman   KS #14587
Michael T. Crabb       KS #24395
Kuckelman Torline Kirkland, LLC
10740 Nall Ave., Suite 250
Overland Park, KS 66211
913-948-8610 (phone)   913-948-8611 (fax)
mkuckelman@ktk-law.com
mcrabb@ktk-law.com

*Attorneys for Plaintiff*

{00590646}

## TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................................................1

II. STATEMENT OF FACTS ............................................................................................1

III. STANDARD OF REVIEW ...........................................................................................1

IV. ARGUMENT AND AUTHORITIES ...........................................................................2

    A. Paasch, Suchy, and Leonard are not entitled to qualified immunity. ..........................2

        1. Plaintiff's Constitutional right to medical attention and care was clearly established in the Tenth Circuit at the time of Olivia's death. ...............................3

        2. Plaintiff's allegations state a viable claim for a violation of Ms. Rennaker's Constitutional rights by Defendants Paasch, Suchy, and Leonard. ........................4

    B. The Court should exercise pendent jurisdiction over Plaintiff's state-law survival claim. ...........................................................................................................................10

V. CONCLUSION ............................................................................................................12

## I. INTRODUCTION

The Tenth Circuit Court of Appeals has made it clear that it recognizes "Congress intended significant recompense when a constitutional violation caused the death of a victim." *Berry v. City of Muskogee*, 900 F.2d 1489, 1501 (10th Cir. 1990).

Through their intentional disregard and deliberate indifference to Olivia Rennaker's Constitutional right to medical care, protections against cruel and unusual punishment, and right to due process under the law, Defendants Paasch, Suchy, and Leonard clearly violated those rights.

Robert Rennaker is entitled to his day in court to seek recompense for his ex-wife's suffering at the hands of the Defendants and their violation of her rights. In accepting all well-pleaded facts as true, the Court should determine that Mr. Rennaker has adequately stated a claim upon which relief can be granted. It must, therefore, deny Paasch, Suchy, and Leonard's motion to dismiss (Doc. 16).

## II. STATEMENT OF FACTS

For his statement of the facts, Mr. Rennaker adopts and incorporates the facts as set forth in his Amended Complaint (Doc. 2).

## III. STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a motion for failure to state a claim should be denied "unless it appears beyond doubt that plaintiffs cannot prove a set of facts that would entitle them to relief." *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 858 (10th Cir. 2016). The Court must assume all well-pleaded facts are true and must draw all reasonable inferences in favor of the plaintiff. *Housing Auth. of the Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir. 1991).

When reviewing the sufficiency of the plaintiff's complaint, the issue is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "Granting a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)). "A judge ruling on a motion to dismiss . . . may not dismiss on the ground that it appears unlikely the allegations can be proven," *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Instead the "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The allegations merely must be enough "to inform the defendants of the actual grounds of the claim against them." *Id*. at 1248.

"Asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Myers v. Brewer*, 773 Fed. Appx. 1032, 1036 (10th Cir. 2019) (quoting Thomas v. Kaven, 765 F.3d 1183, 1194 (10th Cir. 2014)). "It is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness." *Id*. (emphasis added).

IV. **ARGUMENT AND AUTHORITIES**

  **A. Paasch, Suchy, and Leonard are not entitled to qualified immunity.**

In order to overcome qualified immunity asserted in a motion to dismiss, Plaintiff must allege a violation of a Constitutional right that was clearly established at the time of the Defendant's conduct. *See Kellum v. Mares*, 657 Fed. Appx. 763, 767 (10th Cir. 2016). "When confronted with a claim of qualified immunity, a court must first ask the following question:

'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004). In the Tenth Circuit, it is clearly established that "claims based on a jail suicide are considered and treated as claims based on the failure of jail officials to provide medical care for those in their custody." *Barrie v. Grand County, Utah*, 119 F.3d 862, 866 (10th Cir. 1997).

Here, taken in the light most favorable to Plaintiff, the facts alleged show that Defendants Paasch, Suchy, and Leonard unreasonably and wantonly violated Olivia Rennaker's clearly established right to adequate medical care while she was in their custody at the Barber County Jail.

### 1. Plaintiff's Constitutional right to medical attention and care was clearly established in the Tenth Circuit at the time of Olivia's death.

Ms. Rennaker's Constitutional rights were clearly established under the "cruel and unusual punishment" provision of the Eighth Amendment and the due process clause of the Fourteenth Amendment.

"The government has an obligation to provide medical care for those whom it is punishing by incarceration." *Estate of Hammers v. Douglas County, KS Board of Comm'rs*, 303 F.Supp.3d 1134, 1147 (D. Kan. 2018). And the Fourteenth Amendment due process clause "entitles pretrial detainees to the same standard of medical care owed to convicted inmates under the Eighth Amendment." *Rife v. Okla. Dep't. of Pub. Safety*, 854 F.3d 637, 647 (10th Cir. 2017); *see also Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019); *Blackmon v. Sutton*, 734 F.3d 1237, 1244 (10th Cir. 2013).

"By 1997, it was beyond debate that a pretrial detainee enjoys *at least* the same constitutional protections as a convicted criminal. Conduct that violates the clearly established rights of convicts necessarily violates the clearly established rights of pretrial detainees."

*Blackmon*, 734 F.3d at 1240–41 (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)). The distinction between Olivia's Eighth and Fourteenth Amendment rights is thus purely academic. In any event, Plaintiff pleaded a claim for relief under both. *See* Doc. 2 at p. 10.

Deliberate indifference to a detainee's serious medical needs constitutes the "unnecessary and wanton infliction of pain proscribed by the Eight Amendment." *Estate of Hammers*, 303 F. Supp.3d at 1147. "[A]n Eight Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). And it is "clearly established law that the deliberate disregard of a patient's psychological needs can violate a detainee's constitutional rights no less than the deliberate disregard of his physical needs." *Blackmon*, 734 F.3d at 1245.

Here, Plaintiff alleged that Defendants acted with deliberate indifference to Olivia's Constitutional right to psychological medical attention when they neglected her life-threatening condition and later failed to provide access to medical professionals capable of saving her. The right alleged to be violated was clearly-established under Tenth Circuit and Supreme Court precedent at the time of Olivia Rennaker's death.

### 2. Plaintiff's allegations state a viable claim for a violation of Ms. Rennaker's Constitutional rights by Defendants Paasch, Suchy, and Leonard.

A detainee's right to medical care is violated if jailers acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference does "not require a finding of express intent to harm, but must involve more than ordinary lack of due care for the prisoner's interests or safety." *Berry v. City of Muskogee, Okl.*, 900 F.2d 1489, 1495 (10th Cir. 1990). The deliberate indifference standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Mata v. Saiz*, 427 F.3d

745, 753 (10th Cir. 2005)

"The test for constitutional liability of prison officials involves both an objective and a subjective component." *Id.* at 751 (quotation omitted). The objective prong of the deliberate indifference test requires the deprivation at issue to be sufficiently serious. *Id.* A medical need is sufficiently serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* Defendants concede that suicide is sufficiently serious to fulfill the objective prong of deliberate indifference. Doc. 17 at p. 12; *see also duBois v. Payne Cty. Bd. of Cty. Comm'rs*, 543 Fed. App'x 841, 846 (10th Cir. 2013). Here, it would be plainly obvious to any layperson, let alone a jailer, that a human being attempting suicide by hanging would require immediate medical attention.

"The subjective prong of the deliberate indifference test requires the plaintiff to present evidence of the prison official's culpable state of mind." *Mata*, 427 F.3d at 752. That is, the subjective component is satisfied if the prison official "knows of and disregards an excessive risk to inmate health or safety." *Id.* Moreover, "a jury is permitted to infer that a prison official had actual knowledge of the constitutionally infirm condition based solely on circumstantial evidence, such as the obviousness of the condition." *duBois*, 543 Fed. App'x, at 846 (quotation omitted).

In *Tafoya v. Salazar*, the Tenth Circuit concluded a sheriff could be liable for an inmate's sexual assault because he "was aware of prison conditions that were substantially likely to result in the sexual assault of a female inmate," which led the Court to "conclude that a jury might infer that the assaults on [the plaintiff] were caused by these dangerous conditions." 516 F.3d 912, 915 (10th Cir. 2008).

Similarly, in *Bass v. Pottawatomie County Public Safety Center*, the Tenth Circuit found that a jail employee's practice of only "occasionally" watching the television monitor that displayed security feeds was deliberately indifferent to a substantial risk that detainees would be assaulted. 425 Fed. App'x 713, 721 (10th Cir. 2011). "[T]he Jail recognized that it was necessary from a safety perspective to closely supervise detainees" but failed to do so when an inmate was assaulted in view of the cameras. *Id.* at 716.

Likewise here. Defendants' failure to monitor video surveillance amounted to deliberate indifference to Olivia's health and safety. The presence of monitoring equipment indicated that Defendants knew it was necessary from a safety perspective to closely monitor detainees, yet failed to do so. Defendants Paasch, Suchy, and Leonard knew that the conditions of Olivia's confinement created a substantial risk to Olivia's safety. *See* Doc. 2 ¶¶ 46-49, 70. As held in *Farmer*, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

Plaintiff properly alleges that Paasch, Suchy, and Leonard each failed to adequately monitor Olivia. By April 9, 2018, after four days in isolation under 24/7 surveillance, while her mental health visibly deteriorated, Defendants had available evidence of Ms. Rennaker's need for psychological care and deliberately ignored that risk. Defendants' "constitutional duty to take reasonable steps to protect [Ms. Rennaker's] safety and bodily integrity," *Berry*, 900 2.Fd, at 1499, would have been satisfied had they simply followed through on their commitment to monitor her behavior through the surveillance in her observation cell.

Plaintiff's Petition properly alleges that on the afternoon of April 9, Ms. Rennaker started making suspicious movements under her blanket at 3:20 PM that should have alerted any of the employees if they had not remained indifferent to her actions on the video surveillance. Doc. 2, ¶

50. Four minutes later she emerged and climbed to her window to tie the sheet that was around her neck to the bars and then jumped off. *Id.* at ¶ 51. After that attempt was unsuccessful, she lifted her legs at 3:28 PM until jail staff found her at 4:52 PM. *Id.* at ¶¶ 52-53. In total, it is properly alleged Ms. Rennaker's behaviors that should have triggered an intervention by the Defendants, had they not been completely indifferent to her condition, comprised *ninety-two minutes* of blatant and conspicuous harmful behavior. Not intervening over that amount of time presents the plausibility of one of two possible paths: (1) Defendants, who had reason to know about Ms. Rennaker's risk due to her deteriorating mental state brought on by solitary confinement, chose not to take the reasonable step to look at the easily accessible surveillance screen, or (2) Defendants did look at the screen and chose not to act upon what they saw. Either omission on the part of Defendants would be enough to satisfy the subjective prong of deliberate indifference toward Ms. Rennaker's Constitutional right to adequate health care under the Eighth and Fourteenth Amendments based on the factual allegations as presented by Plaintiff.

Plaintiff clearly defined the allegations against each of the Defendants individually:

- "Defendants Andrew Paasch, Mark Suchy, . . . and Janet Leonard were also responsible for supervising and protecting those in custody, including Ms. Rennaker." Doc. 2, ¶ 4.

- "Sheriff Small and Deputy Mark Suchy entered the cell at 4:53 PM." *Id.* at ¶ 54.

- "At the time of Ms. Rennaker's death, . . . Deputies Suchy and Paasch, and Dispatchers Seipel and Leonard were in charge of monitoring and supervising inmates." *Id.* at ¶ 59.

- "At the time of Ms. Rennaker's hanging and for more than an hour after her hanging, Defendants . . . Paasch, Suchy, [and] Leonard . . . failed to monitor the video surveillance station which captured in real-time Ms. Rennaker's hanging and eventual death." *Id.* at ¶ 60.

- "Defendants . . . Paasch, Suchy, . . . and Leonard, acting under color of state law, personally failed to adequately supervise and provide medical care to Ms. Rennaker while she was in custody which resulted in the fatal deprivation of Ms. Rennaker's Constitutional Rights." *Id.* at ¶ 68.

- "Defendants . . . Paasch, and Suchy personally failed to perform any suicide risk screening to Ms. Rennaker at jail intake or any time thereafter, which resulted in the fatal deprivation of Ms. Rennaker's Constitutional rights." *Id.* at ¶ 69.

- "Defendants . . . Paasch, Suchy, . . . and Leonard personally ignored warning signs that Ms. Rennaker was growing more emotionally unstable during her period of confinement at the Barber County Jail, which resulted in the fatal deprivation of Ms. Rennaker's Constitutional rights." *Id.* at ¶ 70.

- "Defendants . . . Paasch, Suchy, . . . and Leonard personally failed to perform adequate periodic cell checks, either in person or by viewing the 24/7 surveillance monitor, to ensure Ms. Rennaker's safety and well-being, which resulted in the fatal deprivation of Ms. Rennaker's Constitutional rights." *Id.* at ¶ 72.

Plaintiff does not impermissibly lump Defendants together in the Petition, but rather identifies individuals repeatedly in factual allegations and distinguishes from allegations against the state, of which there are none.

Additionally, Defendants argue that they were not responsible for supervising detainees. Doc. 17, p. 14; Doc. 2, ¶ 59. First, this is not an issue for a 12(b)(6) motion to dismiss, as this is an issue of fact, properly pleaded by Plaintiff, which must be accepted as true for a motion to dismiss. Second, Defendants cite to Kansas statute, although the statute they reference clearly states "The sheriff of the county by himself *or deputy shall keep the jail, and shall be responsible* for the manner in which the same is kept." K.S.A. 19-1903 (emphasis added). At the time of Ms. Rennaker's death, both Defendants Paasch and Suchy were deputies of the Barber County Sheriff's office. Doc. 2, ¶ 29. Further, the Court has previously ruled in cases where an employee of the jail who has access to video surveillance, as Defendant Leonard had, can be reasonably seen by a jury as having displayed deliberate indifference toward a detainee's safety, indicating that there was a Constitutional duty for protecting the detainee's safety placed on the jail employee. *See Bass*, 425 Fed. App'x, at 721. Defendants did, as a matter of law, have a responsibility for detainees at the Barber County Jail.

Plaintiff's factual allegations, when accepted as true for purposes of this motion, state a plausible claim that meets the *Twombly* standard. Defendants suggest that Plaintiff's allegations that Defendants Paasch, Suchy, and Leonard were present at the jail made on "information and belief" do not count as valid factual allegations. Doc. 17, p. 16-17; Doc. 2 ¶ 71. Courts have ruled otherwise, establishing that factual allegations made on information and belief are sufficient to meet the pleading requirements for stating a claim in which Plaintiff is entitled to relief. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (stating "The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant . . . [or] based on factual information that makes the inference of culpability plausible") (citations and internal quotations omitted). The *Twombly* requirement is not that the Plaintiff must provide evidence of their allegations, or create an expectation of probability, but rather "it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the alleged violations. *Twombly*, 550 U.S., at 556. Plaintiff's allegations in the Petition have accomplished this based on what is available without the benefit of discovery.

Plaintiff's Petition has provided enough factual allegations to meet Fed. R. Civ. P. 8(a) requirements, surpassing the *Twombly* plausibility standard, and Defendants' 12(b)(6) motion should be denied. Plaintiff has established Ms. Rennaker had a clearly established Constitutional right to adequate health care, supported by factual allegations that Defendants violated this right with deliberate indifference to the risks to her personal safety. Defendants' conduct as alleged in the complaint does not stand up to legal reasonableness required to invoke qualified immunity. *Myers*, 773 Fed. App'x at 1036. Plaintiff's factual allegations, taken as true, create a cause of action for which Plaintiff is entitled to relief that is plausible on its face. *Robbins*, 519 F.3d at

1248. Therefore, Defendants' 12(b)(6) motion to dismiss and the invocation of qualified immunity should be denied.

### B. The Court should exercise pendent jurisdiction over Plaintiff's state-law survival claim.

It is well-established that a federal court may exercise pendent jurisdiction over a state-law claim whenever there is a claim arising under the U.S. Constitution and that claim is so related to the state law claim that the entire action comprises but one case. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). The key question is whether the federal and state claims arise "from a common nucleus of operative fact." *Id.* When considering the claims "without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole." *Id.*

Here, it is readily apparent that the federal § 1983 claim shares a common nucleus of operative fact with the state survival claim: the deprivation of Olivia's Constitutional right to adequate medical care that resulted in her suicide at the Barber County Jail.

Kansas state law provides a remedy for Plaintiff through a survival action in the absence of an adequate federal remedy. Defendant refers to *Berry* as the precedential authority in whether survival is a cause of action, but the present case is distinguished in a few ways from *Berry*. To begin, the Tenth Circuit in *Berry* provides that 42 U.S.C. § 1988 can allow state law to provide a remedy when federal law does not. *Berry*, 900 F.2d, at 1502. The court held that Oklahoma survival law did not provide a Constitutionally valid remedy, as the remedy was extremely limited by only allowing for property loss (of which there was none) and a loss of decedent's earnings between the injury and death (of which there also was none). *Id.* at 1504.

Kansas statute does not provide such strict limitations, with courts finding that "[a]

survival action allows the personal representative of the decedent's estate to recover damages accrued by the injured party between the time of injury and death, including pain and suffering experienced by the injured party between the time of injury and the time of death." *Draughon v. U.S.*, 103 F.Supp. 3d 1266, 1278 (D. Kan. 2015); *see also Mason v. Gerin Corp.*, 647 P.2d 1340, 1343 (Kan. 1982) (explaining that "a cause of action for wrongful death is a separate and distinct type of action from a survival action authorized by K.S.A. 60-1801 et seq."). In addition, the *Berry* court found that under Oklahoma statutes "nearly all recoverable damages are expressly funneled to the decedent's surviving spouse and children to the exclusion of decedent's creditors or the beneficiaries of the decedent's will, if he or she has one." *Berry*, 900 F.2d, at 1506. Again, this is not the case for the Kansas survival statute, which does not limit damages recovery in this way.

Kansas's survival statute provides a valid remedy created in the deceased, Olivia, and does not create an additional cause of action in her estate. Among the biggest reasons for the *Berry* court's finding was that because the survival statute provided no relief under § 1988, the court would have to rely on the wrongful death statute to find remedy, under which damages would be duplicated by creating a new cause of action in the decedent's heirs. *Id.* at 1506. Kansas statute again differs here. Unlike the Oklahoma statute, Kansas includes "death by wrongful act or omission" in its survival statute, which should be read as creating a cause of action in the decedent, not the family, in the case of a wrongful death. K.S.A. 60-1801. If the wrongful death is manifested in the decedent as part of the survival statute, then the action is not duplicated in being brought by Olivia's estate, and the cause of action for her pain and suffering between her injury and time of death can be sufficiently remedied.

## V. CONCLUSION

Ms. Rennaker had every right to adequate health care for her physical and mental wellbeing, as established by statutory and court precedent, and Defendants violated that right, resulting in her death. Assuming all well-pleaded factual allegations as true, drawing all reasonable inferences in Plaintiff's favor, and evaluating Defendants' actions as alleged in the Petition, the Court should find that Mr. Rennaker has adequately and plausibly stated a claim upon which relief may be granted. The Court should not dismiss the claim against Defendants based on the privilege of qualified immunity, as it does not apply in this case. Defendants Paasch, Suchy, and Leonard's Motion to Dismiss (Doc. 16) should be denied.

Dated: August 14, 2020

Respectfully submitted:

*/s/ Michael T. Crabb*
Michael J. Kuckelman    KS #14587
Michael T. Crabb    KS #24395
Kuckelman Torline Kirkland, LLC
10740 Nall Ave., Suite 250
Overland Park, KS 66211
913-948-8610 (phone)    913-948-8611 (fax)
mkuckelman@ktk-law.com
mcrabb@ktk-law.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing via the Court's CM/ECF system on August 14, 2020, which will automatically generate notice to all counsel of record.

*/s/ Michael T. Crabb*
Attorney for Plaintiff