IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROBERT RENNAKER, as Administrator
of the Estate of OLIVIA A.
RENNAKER,
               Plaintiff,
vs.                                      Case No. 20-2165-SAC-GEB

VIRGIL BREWER, et al.,
               Defendants.

**O R D E R**

    This is an action arising from the suicide of Olivia A. Rennaker while she was a pretrial detainee at the Barber County Jail.  In this order the court shall refer to Robert Rennaker, the administrator of Olivia Rennaker's estate, as "plaintiff" and shall refer to Olivia Rennaker as "Rennaker."  Plaintiff has sued six current or former members of the Barber County Sheriff's Office.  These defendants are:  Virgil "Dusty" Brewer, the Undersheriff of Barber County; Lonnie Small, the Sheriff; Andrew Paasch, a Sheriff's Deputy; Mark Suchy, a Sheriff's Deputy; Janet Leonard, an employee of the Sheriff's Office; and Cheryl Seipel, a dispatch supervisor for the Sheriff's Office.  Each defendant is sued in his or her individual capacity.

    This case is before the court upon three motions to dismiss filed on behalf of all defendants except defendant Seipel.  Doc. No. 13 is filed on behalf of defendant Small, Doc. No. 16 is filed on behalf of defendants Leonard, Paasch and Suchy, and Doc. No. 20

1

is filed on behalf of defendant Brewer. When the court uses the term "defendants" later in this order, the court is referring to defendants Small, Brewer, Leonard, Paasch and Suchy.

I. The first amended complaint

The first amended complaint (Doc. No. 2) is the operative complaint in this matter. In it, plaintiff alleges that on April 4, 2018 Rennaker was arrested during a drug raid and charged with unlawful possession of a small amount of marijuana and unlawful possession of drug paraphernalia. She was placed in the Barber County Jail with a bond set at $5,000.00. According to the complaint, the Barber County Sheriff's Office maintains no policies or procedures or training for screening prisoners for suicide risk when they are taken into custody. The complaint asserts that Rennaker was not screened.

The Barber County Jail has an average inmate population of four and a jail capacity of seven. Rennaker was the only female prisoner in the jail. The complaint alleges that she was going through withdrawal while in custody, but does not provide any factual grounds in support of this statement or grounds to find that defendants knew this. Rennaker received no visitors while in jail and attempted at least 25 phone calls, many to the same numbers. During her confinement she wrote a note to another inmate named "Jaime" indicating that her family was not answering her phone calls and that she hoped to be released on an OR bond "like

2

always" or that Jaime would bail her out. Doc. No. 2, p. 8. Five days after her arrest, on April 9, 2018, Rennaker wrapped a "fabric item" (alleged to be "bedding") around her neck and attempted to hang herself from the bars of her cell. Id. at pp. 7-8. This was around 3:20 p.m. Her first attempt failed because her feet touched the floor, but at 3:28 p.m. Rennaker lifted her feet from the floor to suffocate herself. Rennaker was not discovered until 4:52 p.m. Defendants Small and Suchy entered her cell at 4:53 p.m. and cut the fabric. Rennaker had no pulse. CPR was administered at the jail, but Rennaker was later pronounced dead at the local hospital.

The complaint alleges that "Sheriff Small, Undersheriff Brewer, Deputies Suchy and Paasch, and Dispatchers Seipel and Leonard were in charge of monitoring and supervising inmates." Id. at p. 9. It is further alleged that no one checked on Rennaker's cell for more than an hour before her death and that each defendant failed to monitor the video surveillance station which "captured in real-time Ms. Rennaker's hanging and eventual death." Id.

The complaint asserts that each defendant failed to personally check upon Rennaker's cell to ensure her safety and well-being; that each defendant failed to adequately supervise and provide medical care to Rennaker; that each defendant personally ignored warning signs that Rennaker was growing emotionally unstable; that defendants Small, Brewer, Paasch and Suchy failed

3

to perform any suicide risk screening; and that defendants Small and Brewer failed to train and supervise subordinates and failed to create or implement policies and procedures which would have protected Rennaker's safety and well-being.

The complaint cites statistics regarding suicide in United States jails. These statistics indicate, inter alia, that suicide is the leading cause of death in U.S. jails; that the suicide rate is over twice the rate in the general population; that hanging is by far the most common method; and that almost half of suicide victims have a substance abuse history.

According to Count One of the complaint, these allegations describe a violation of Rennaker's constitutional rights enforceable under 42 U.S.C. § 1983. A "survival" action is briefly asserted in Count Two.

II. Count One shall be dismissed upon qualified immunity grounds.

Each motion to dismiss raises a qualified immunity defense among other arguments. The court shall focus upon the qualified immunity defense in this order.

Qualified immunity protects governmental officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In deciding a motion to dismiss based on qualified immunity the court considers: 1) whether the facts plaintiff alleges make out a constitutional

4

violation; and 2) whether the right at issue was clearly established at the time of the alleged misconduct. Keith v. Koerner, 707 F.3d 1185, 1188 (10th Cir. 2013). The court has discretion in deciding which of these two requirements is addressed first. Pearson v. Callahan, 555 U.S. 223, 236 (2009). Here, it is plain that the constitutional rights claimed by plaintiff are not clearly established.

A constitutional right is clearly established if "every reasonable official would have understood that what he is doing violates" the constitutional right at issue. Reichle v. Howards, 566 U.S. 658, 664 (2012)(quotations omitted). This can be shown if "courts have previously ruled that materially similar conduct was unconstitutional, or if a general constitutional rule already identified in the decisional law applies with obvious clarity to the specific conduct at issue." Apodaca v. Raemisch, 864 F.3d 1071, 1076 (10th Cir. 2017)(quotations omitted). The court must decide whether "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts . . . have found the law to be as the plaintiff maintains." Clark v. Wilson, 625 F.3d 686, 690 (10th Cir. 2010)(quotation omitted). "The dispositive question is whether the violative nature of the *particular conduct* is clearly established." Aldaba v. Pickens, 844 F.3d 870, 877 (10th Cir. 2016)(quotations omitted). The law is not

5

clearly established unless such case precedent places the question beyond debate. Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

Jail suicide claims are treated as claims based on the failure of jail officials to provide medical care to inmates. duBois v. Payne County Bd. of County Com'rs, 543 Fed.Appx. 841, 846 (10th Cir. 2013)(quoting Barrie v. Grand County, 119 F.3d 862, 866 (10th Cir. 1997)). The Eighth Amendment's deliberate indifference test is applied to such claims on behalf of inmates who were serving sentences. Id. The same test is applied to claims brought on behalf of pretrial detainees under the Fourteenth Amendment. See Strain v. Regalado, ____ F.3d _____, 2020 WL 5985993 *1-2 (10th Cir. 10/9/2020). The test has two prongs: an objective prong requiring a sufficiently serious medical need and/or harm; and a subjective prong requiring that the defendant be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and the defendant must also draw the inference. Id. at *3. In other words, there must be a substantial risk of suicide under the circumstances and the defendant must be aware of the facts constituting the substantial risk of suicide by an individual inmate. Cox v. Glanz, 800 F.3d 1231, 1249-50 (10th Cir. 2015).

The amended complaint alleges "well-known" statistics about the risk of jail suicide in general, but few facts regarding Rennaker's individual risk of suicide that were known to

6

defendants.  Indeed, plaintiff states in response to a motion to dismiss that defendants "had no idea [Rennaker] was in distress."[1] Doc. No. 29, p. 6.  The amended complaint asserts that defendants violated Rennaker's constitutional rights because defendants: failed to create or implement jail policies and procedures; failed to adequately train and supervise subordinates; failed to monitor Rennaker's cell using the video surveillance system; failed to check Rennaker's cell more than an hour before the suicide; failed to perform any suicide risk screening; failed to provide medical care to Rennaker; and ignored "warning signs" that Rennaker was "growing more emotionally unstable."[2]

Plaintiff has not presented authority showing that, given their alleged knowledge of Rennaker's circumstances, the defendants' particular conduct was a clearly established violation of Rennaker's constitutional rights.  The circuit or Supreme Court cases cited by plaintiff do not involve the facts alleged in the amended complaint in the context of an inmate's suicide.  Some of the cases set out the general deliberate indifference standard applicable in jail suicide cases.  But, they do not set forth a

---

[1] Plaintiff also states that it is plausible that defendants did look at the monitoring screen and chose not to act. Doc. No. 30, p. 7. The court disagrees. No facts are alleged which plausibly describe knowledge of and indifference to a hanging body or indifference to a substantial inmate-specific risk of suicide.
[2] The "medical care" and "warning signs" allegations are ambiguous, conclusory and unsupported by facts showing that defendants knew or reasonably should have known that there was a particularized and substantial risk Rennaker would commit suicide or that she was suffering from a serious medical or mental health issue. The court is not required to credit such allegations.  See Walker v. Hickenlooper, 627 Fed.Appx. 710, 715 (10th Cir. 2015).

7

clearly established standard breached by defendants.³ Nor do they hold, as plaintiff argues here (Doc. No. 29, pp. 9-10), that jail officers are constitutionally at fault for delay in caring for an inmate who has hung herself, when the jail officers are unaware that the inmate has hung herself and unaware of a substantial inmate-specific risk of suicide.

The Supreme Court has stated that an inmate does not have a clearly established right to be screened for the risk of suicide. Taylor v. Barkes, 575 U.S. 822, 135 S.Ct. 2042, 2044-45 (2015)(per curiam); see also Cox, 800 F.3d at 1250 ("irrespective of the alleged deficiencies in the Jail's suicide-screening protocols, in order for any defendant . . . to be found to have acted with deliberate indifference, he needed to first have knowledge that the specific inmate at issue presented a substantial risk of suicide"). The Tenth Circuit has held that there is no broad constitutional duty to monitor inmates constantly. Gaston v. Ploeger, 229 Fed.Appx. 702, 711 (10th Cir. 2007). The required

---

³ Plaintiff cites such cases as: Tafoya v. Salazar, 516 F.3d 912 (10th Cir. 2008)(a conditions of confinement case involving the risk of sexual assault upon female inmates); Bass v. Pottawatomie County Public Safety Center, 425 Fed.Appx. 713 (10th Cir. 2011)(an unpublished opinion involving a jury verdict against a county agency (not an individual officer) because of the way it detained an intoxicated pretrial detainee who was assaulted in a holding cell); Mata v. Saiz, 427 F.3d 745 (10th Cir. 2005)(involving the denial of medical care to an inmate suffering severe chest pains); duBois, 543 Fed.Appx. 841 (an unpublished opinion affirming summary judgment for sheriff and jail administrator where facts did not show they knew a deceased inmate's fellow prisoner had told jail staff that the inmate was suicidal); Barrie, 119 F.3d 862 (10th Cir. 1997)(no deliberate indifference found where arrestee was placed in jail's drunk tank in sweat pants with a cord the inmate later used to commit suicide).

"inmate-specific knowledge of a risk of suicide" to "impose deliberate-indifference liability upon jail employees" is not satisfied by knowledge of an inmate's intoxication. Cox, 800 F.3d at 1249-50; see also, Gaston, 229 Fed.Appx. at 712 (10th Cir. 2007)(qualified immunity affirmed where jail officer did not consider inmate with a drug history to be suicidal and inmate was not an obvious suicide risk); Estate of Hocker by Hocker v. Walsh, 22 F.3d 995, 1000 (10th Cir. 1994)(knowledge of intoxication or a mental health issue is insufficient to establish subjective prong of deliberate indifference test); Carroll v. Lancaster County, 301 F.Supp.3d 486, 497 (E.D.Pa. 2018)(increased risk of suicide due to drug withdrawal cannot support a deliberate indifference claim); Estate of Allen v. Cumberland County, 2018 WL 1293154 *10-11 (D.N.J. 3/13/2018)(neither allegation of opiate withdrawal nor baseline risk of inmate suicide is sufficient to establish particular vulnerability to suicide); Hockensmith v. Minor, 2018 WL 6528117 *9-10 (D.Colo. 12/11/2018)(finding no precedent establishing liability for lack of supervision and training regarding inmate alcohol withdrawal and self-harm risk).

These cases inform the court's conclusion that defendants did not violate a clearly established right and that defendants are entitled to qualified immunity against plaintiff's claims. Plaintiff has failed to allege facts showing a subjective awareness of a substantial suicide risk and failed to cite case authority

9

establishing beyond debate that defendants' actions or omissions violated Rennaker's constitutional rights.

### III. Count Two shall also be dismissed.

Count Two is labelled "Survival." Plaintiff alleges that "[a]s a result of Defendants' conduct under color of state law," Rennaker suffered "immense, conscious pain and suffering after hanging in her cell" and that Rennaker "could not and did not file a legal action against Defendants for such pain and suffering before her death." Doc. No. 2, p. 13. In response to the defendants' motions to dismiss, plaintiff indicates that this is a state law claim upon which this court should exercise supplemental jurisdiction, although the complaint does not mention a state law theory of recovery or the supplemental jurisdiction statute, 28 U.S.C. § 1367.[4]

The court shall dismiss Count Two for the same qualified immunity reasons discussed regarding Count One. The court construes Count Two as making a claim for damages under federal law, § 1983. See Estate of Holmes by and through Couser v. Somers, 387 F.Supp.3d 1233, 1257 (D.Kan. 2019)(a survival action under § 1983 is not a separate claim that has a separate award of damages; "[r]ather it is essentially the assertion of the cause of action that the deceased would have had had he lived, requesting damages

---

[4] The amended complaint states that this action arises under § 1983 and that the court has jurisdiction under 28 U.S.C. § 1331. Doc. No. 2, p. 4.

for violation of the decedent's rights")(quotation omitted). Plaintiff may not add to or change his claims in the complaint, by labelling his claim as a state law claim in his response to a motion to dismiss. See Thomason v. Nachtrieb, 888 F.2d 1202, 1205 (7th Cir. 1989); Hockensmith v. Minor, 2018 WL 6528117 *7 (D.Colo. 12/11/2018); Hale v. Emporia State Univ., 2016 WL 917896 *4 (D.Kan. 3/8/2016).

The court finds that Count Two is part of plaintiff's § 1983 claim in Count One and should be dismissed for the qualified immunity reasons the court has previously explained.

IV. Conclusion

For the above-stated reasons, the court grants the motions to dismiss defendants Small, Brewer, Paasch, Suchy and Leonard. Doc. Nos. 13, 16 and 20.

**IT IS SO ORDERED.**

Dated this 21st day of October 2020, at Topeka, Kansas.

s/Sam A. Crow
U.S. District Senior Judge

11